**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRUCE BAYER and ANGELA BAYER, individually and as parents and/or natural guardians of G.Z., P.Z., and J.B., | NO. 3:04-CV-02505 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| MONROE COUNTY CHILD & YOUTH SERVICES, et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) (Docs. 159, 164) and Plaintiffs' motion to strike the affidavit of Defendant Michael E. Robson.  (Doc. 202).  For the reasons set forth below, Defendants' motion for summary judgment will be granted in part and denied in part.  First, Defendants' motion will be granted with respect to the § 1983 claims asserted by Plaintiffs Bruce Bayer and J.B., as they lack standing to sue for constitutional violations for familial integrity.  Second, Defendants' motion will be granted with respect the substantive due process claim against Defendants Geese, Dry, and Robson based upon the *Rooker-Feldman* doctrine.  Third, Defendants' motion will be denied with respect to Defendants Dry and Bahl based upon a violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment for a post-deprivation hearing.  Fourth, Defendants' motion will be granted with respect to all Defendants for the claims based upon a violation of the Pennsylvania Constitution, Article I, Section 1.  Fifth, Defendants' motion will be granted respect to all Defendants for claims of punitive damages, as the

Defendants have not acted with the requisite motive or intent to justify such damages. Finally, Plaintiffs' motion to strike Defendant Robson's affidavit will be dismissed as moot, as all claims against Defendant Robson will be dismissed on the grounds of subject matter jurisdiction.

Because a federal question is before the Court pursuant to Title 42 of the United States Code, section 1983, the Court exercises jurisdiction over this action pursuant to section 1331 of Title 28 of the United States Code ("federal question").


**BACKGROUND**

Plaintiffs P.Z., G.Z., and J.B. are minor children.  (Defs. Bahl, Giese, and Dry's Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. ¶ 6, Doc. 165.) Plaintiff Angela Bayer is the biological mother of the minor children.  (*Id.* ¶ 9.)  Plaintiff Bruce Bayer is the second husband of Angela and the stepfather of P.Z. and G.Z.  (*Id.* ¶ 10.)

The Bayer family was in contact with Monroe County Children and Youth Services ("CYS") prior to the incidents in the case at bar, and the minor children P.Z. and G.Z. were interviewed by CYS no less than ten (10) times regarding various allegations of abuse prior to January 14, 2003.  (*Id.* ¶ 43.)  On January 10, 2003, a phone call was placed to CYS to report that the minor children G.Z. and P.Z. had been subject to sexual abuse by their biological father.  (*Id.* ¶¶ 38-43.)  It is disputed as to who placed the call. (*Id.* ¶ 41;  Pls.' Counterstatement of Undisputed Facts to Defs. Bahl, Giese, and Dry ¶ 40, Doc. 211.)  Defendants allege that Angela and Bruce Bayer reported to CYS that the

2

children's biological father was about to appear at their home to exercise his visitation rights.  (Doc. 165 ¶ 52.)  Plaintiffs agree that the biological father was to exercise his visitation rights, but state that he was not scheduled to come until the next day.  (Doc. 211 ¶ 52.)  Plaintiffs further state that they did not place the phone call to CYS, and that the therapist of one of the minor children called CYS.  (*Id.* ¶ 40.)

On January 10, 2003, the children were placed in the custody of CYS. (Doc. 165 ¶ 50; Doc. 211 ¶ 50.)  However, it is disputed as to whether the police took the children into custody, or if Plaintiffs Bruce and Angela Bayer brought the children to CYS.  (Doc. 165 ¶ 50; Doc. 211 ¶ 50.)   Plaintiffs Angela and Bruce Bayer were served with a notice of placement regarding protective custody signed by Detective Michael Robson of the Pocono Regional Police Department.  (Doc. 163 Ex. A.)  Pursuant to the order, the minor-Plaintiffs G.Z. and P.Z. were removed from the home and placed in protective custody with CYS while the children's biological father was being investigated on the alleged sexual abuse charges.  (*Id.*)

However, Plaintiffs assert that the protection order was defective.  (Doc. 211 ¶ 2.) Plaintiffs assert that the police were not present when CYS removed the children, although Detective Robson's signature was on the notice of placement.  (*Id.* ¶ 50.) Similarly, they state that Detective Robson was outside of his jurisdiction when he signed the notice of placement.  (*Id.* ¶ 2.) Plaintiffs further assert that the children's biological father resided at a different address at the time the children were removed.  (A. Bayer Dep. 110: 10-15, June 12, 2006, Doc. 165 Ex. A.)

On January 13, 2003, Defendant Heather Dry forwarded the information to a

3

solicitor for an emergency petition for protective custody for G.Z. and P.Z. on the morning of Monday, January 13, 2003.  (Doc. 165 Ex. H. ¶ 34.)  On January 14, 2003, CYS filed for the emergency petition, which was heard before Judge Margherita Patti Worthington on January 16, 2003.  (Doc. 163 Ex. P, Ex. W.)

At the January 16, 2003 dependency hearing, Plaintiff Angela Bayer, with assistance of counsel, agreed to continue the hearing until February 20, 2003. (Dependency Hr'g Tr.  75: 4-24,  Jan. 16, 2003,  Doc. 163-42.)  Plaintiff Angela asserts that she was under duress when she agreed to the continuance.  (A. Bayer Dep. 35: 14-25.)  Pending the hearing on February 20, 2003, Judge Worthington granted custody of the minor-Plaintiffs to CYS.  (Dependency Hr'g Tr. 77:18 - 78:8, Doc. 163-42.)  This was based on Judge Worthington's understanding that an agreement was reached that protective custody would continue. (Dependency Hr'g Tr. 71:13-19, Doc. 163-41.)  On January 28, 2003, the sexual abuse case against the children's biological father was deemed unfounded.  (Doc. 163 Ex. AA, Ex. BB.)  At the hearing on February 20, 2003, Judge Worthington denied CYS' petition and returned the Plaintiffs' minor children to their care. (Doc. 163 Ex. Z.)  Judge Worthington further held that "The Court finds that reasonable efforts were made to prevent the need for placement of the children, but placement was necessary due to allegations of abuse."  (Compl. Ex. Z, Doc. 1.)

On November 24, 2004, Plaintiffs filed, *pro se*, a Complaint raising forty-one (41) claims against thirty-one (31) Defendants.  (Doc. 1.)  On November 29, 2004, Plaintiffs filed an amended complaint.  (Doc. 2.)  The amended complaint consisted of the first five pages of the original Complaint with a different spelling of a defendant's name.  Plaintiffs then filed an amendment to the complaint on December 8, 2004.  (Doc. 3.)  Both the

4

amended complaint and the amendment to the complaint were stricken by the Court's

Order on April 11, 2005.  (Doc. 96.)  On September 12, 2005, September 29, 2005,

February 16, 2006, and June 29, 2006, the Court issued Memoranda and Orders

dismissing the majority of the Defendants from the case.  (Docs. 111, 115, 124, 155.)

The remaining Defendants are Sat Bahl, Heather Dry, P.J. Geese, and Detective Michael

E. Robson.  Defendants Bahl, Geese and Dry filed an Answer to the Complaint on

October 6, 2005.  (Doc. 117.) Defendant Robson filed an Answer on October 24, 2005.

(Doc. 118.)  On October 12, 2006, the Court issued an Order reinstating the minor

children as Plaintiffs, but only as to the remaining Defendants.  (Doc. 158.)  On October

17, 2006, Defendant Robson moved for summary judgment of the remaining claims.

(Doc. 159.)  The same day, the other remaining Defendants also moved for summary

judgment.  (Doc. 164.)  On May 11, 2007, Plaintiffs moved to strike the affidavit of

Defendant Michael E. Robson. (Doc. 202.)  These motions are fully briefed and ripe for

discussion.

**LEGAL STANDARD**

**I.       Motion to Strike Under Rule 56(e)**

Plaintiffs move to strike the affidavit of Defendant Michael E. Robson submitted in

support of Defendant's motion for summary judgment based on non-compliance with

Rule 56(e) of the Federal Rules of Civil Procedure.  Although Rule 56(e), which sets forth

the form that affidavits must take, does not specifically provide for a motion to strike,

courts have held that a party wishing to challenge an opponent's affidavits for containing

defects under Rule 56(e) should move to strike the affidavits or else waive any objection

to the defects.  *See, e.g., In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 437 n.12 (3d Cir. 1996); *Grine v. Coombs*, 214 F.R.D. 31, 38-39 (W.D. Pa. 2003).

Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits in support or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  If portions of an affidavit do not meet these standards, it is appropriate for a court to disregard, or strike, those portions from the record for purposes of resolving the summary judgment motion.

## II.      Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of

proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Liberty Lobby*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

Plaintiffs' Complaint alleges that Defendants violated their civil rights by unlawfully

and under color of law, seizing the minor children and placing them in foster homes in violation of Plaintiffs' rights to familial integrity pursuant to the Fourteenth Amendment's substantive due process clause.  Plaintiffs allege a Fourteenth Amendment violation based upon procedural wrongs couched in a state statute, 42 PA. CON. STAT. ANN. § 6332(a).  Plaintiffs also make a state claim of violations against the Pennsylvania Constitution, Article I, Section 1.  Finally, Plaintiffs request punitive damages based upon these violations.

Plaintiffs argue that the Court should strike the affidavit submitted by Defendant Michael E. Robson in support of his summary judgment motion because the affidavit is not made on personal knowledge, and that many of the statements are based upon hearsay, or are misleading, conclusory, and speculative.

Defendants argue that this Court lacks subject matter jurisdiction over the claims based on the *Rooker-Feldman* doctrine.  Defendants also argue that Plaintiff Bruce Bayer lacks standing as a stepparent to bring a § 1983 claim.  Defendants further argue that they should enjoy absolute immunity, or in the alternative, qualified immunity, from suit under section 1983 for their actions in seizing the children from the home, arranging for a dependency hearing, and other actions with respect to the custody of the minor children. Similarly, Defendants argue that they are immune from the state law claims by the Political Subdivisions Tort Claims Act.

## I.     The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine applies as a limit on federal district court jurisdiction in regard to reviewing the final adjudication of a state's highest court.  *District of Columbia*

*Court of Appeals v. Feldman*, 460 U.S. 462, 474 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). This doctrine equally applies to orders issued by lower state courts. *Port Auth. Police Benevolent Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992). The *Rooker-Feldman* doctrine is "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Federal courts have a duty to examine subject matter jurisdiction at all stages of a litigation. *See United States Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388-89 (3d Cir. 2002).

Constitutional claims presented to a federal district court that are "inextricably intertwined" with the state court's decision in a judicial proceeding are essentially a prohibited call to review the state court decision. *Feldman*, 460 U.S. at 483 n.16; *see also Blake v. Papadakos*, 953 F.2d 68, 71 (3d Cir. 1992). A claim is "inextricably intertwined" if the federal claim succeeds only to the extent that a state court wrongly decided the issues before it. *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)). However, constitutional claims that do not involve the invalidation of a state court judgment can be heard in a district court. *See Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 492 (3d Cir. 1997).

Plaintiffs allege that their Fourteenth Amendment substantive due process right to familial integrity was violated based upon the allegedly unnecessary and improper

removal of G.Z. and P.Z. during the pending sexual abuse investigation of the children's

biological father.  This claim is barred by the *Rooker-Feldman* doctrine.  In its decision to

place the children in protective custody, the state court clearly determined that the

government's interest in protecting the children outweighed Plaintiffs' liberty interest.  The

state court enunciated this finding on February 20, 2003, holding that "The Court finds

that reasonable efforts were made to prevent the need for placement of the children, but

placement was necessary due to allegations of abuse."  (Compl. Ex. Z, Doc. 1.)  Although

the Plaintiffs present evidence that the police were not present at the time of the

children's removal, they do not have a remedy with this Court.  These claims are a

prohibited call to review the state court's judgment.  Therefore, the substantive due

process claims against Defendants Dry, Geese, and Robson will be dismissed.

The requirements of Article I, Section 1 of the Pennsylvania Constitution are

indistinguishable from those of the Due Process Clause of the Fourteenth Amendment

and the same analysis applies.  *Pennsylvania Game Comm'n v. Marich*, 666 A.2d 253,

255 n. 6 (Pa. 1995).   As this Court is barred from hearing the federal Fourteenth

Amendment substantive due process claims due to the *Rooker-Feldman* doctrine, it is

similarly barred from hearing the same substantive due process claims under Article I,

Section 1 of the Pennsylvania Constitution.  Therefore, the substantive due process

claims brought pursuant to the Pennsylvania Constitution, Article I, Section 1 will be

dismissed against Defendants Geese, Dry, and Robson.

As the two substantive claims remaining against Defendants Geese and Dry will

be dismissed based upon lack of subject matter jurisdiction, the punitive damages claim

against them will also be dismissed.  Furthermore, Plaintiffs' motion to strike the affidavit

of Defendant Robson will be dismissed as moot, as all claims against Defendant Robson

will be dismissed based upon lack of subject matter jurisdiction.

## II.    Standing of Plaintiffs Bruce Bayer and J.B.

The issue of subject matter jurisdiction can be raised by any party or on the court's

motion at any time.  *Chemical Leaman Tank Lines v. Aetna Casualty & Surety Co.*, 177

F.3d 210, 220 (3d Cir. 1999).  A court lacks subject matter jurisdiction over a claim

brought by a plaintiff who lacks constitutional standing.  *Brian A. ex rel. Arthur A. v.*

*Stroudsburg Area Sch. Dist.*, 141 F. Supp. 2d 502, 507 (M.D. Pa. 2001) (citing WRIGHT,

MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3531 *et seq.*).

To assert a cause of action under § 1983, Plaintiffs must have a constitutionally protected

interest in order to have standing to bring suit.  *Schreiber v. City of Philadelphia*, No. Civ.

A. 98-5648, 1999 WL 482310, at *2 (E.D. Pa. July 9, 1999).

Defendants challenge the standing of Plaintiff Bruce Bayer to bring suit pursuant to

§ 1983 because his relationship to the minor children is that of a stepfather.  Although the

Third Circuit Court of Appeals has not directly ruled as to whether a stepparent has

standing to support a constitutional claim for familial integrity, other district and circuit

courts are instructive on this point.

In one of the first cases to address the issue, the First Circuit Court of Appeals

held that a stepfather and siblings did not have standing to sue for the death of their adult

stepson and brother.  *See Valdivieso Ortiz v. Burgos*, 807 F.2d 6 (1st Cir. 1986) (holding

that a stepfather did not have constitutionally protected liberty interest with adult stepson

under § 1983).

This holding has been followed in the context of minor children.  For example, in *Bowie v. Texas Dep't of Protective and Regulatory Servs.*, No. Civ. A. 5:04-CV275-C, 2004 WL 2870078, at *1 n. 2 (N.D. Tex. Dec. 13, 2004), the district court held that a stepparent without a custodial interest in the minor children did not have standing to sue for a violation of constitutional rights based upon the removal of the children from the home by social services.  The court noted that "[the stepfather] admits that he has neither legally adopted the children nor has he been legally appointed as their guardian.  Thus, he has no standing to pursue an action related to the removal of the children from the home."  Similarly, the Eastern District of Louisiana in *Irvin v. Foti*, No. Civ. A. 99-1526, 1999 WL 504916, at *7 (E.D. La. July 13, 1999) noted that

> [A]s the constitutional liberty interest in parenting is fairly narrow, and many circuits have held that it does not extend to other blood relationships, such as sibling relationships, the court finds that a stepparent who is not also an adoptive parent does not have an interest in the parent-child relationship sufficient to support a constitutional claim.

In this case, Plaintiff Bruce Bayer has admitted that there is no court order requiring him to support the children, and that he supports them out of moral obligation, which he considers to be "law".  (B. Bayer Dep. 162:17-163:11, June 12, 2006, Doc. 165 Ex. A.)  Nor has there been a custodial order by a court granting him custody of the minor children.  (B. Bayer Dep. 163: 12-17.)  He also has not adopted the minor children, although he states he would if the minor children so chose and the biological father agreed. (B. Bayer Dep. 163: 18-24.)  As Plaintiff Bruce Bayer is not an adoptive parent, has no custodial rights to the minor children, and has no court ordered support with

12

respect to the minor children, he does not have an interest in the parent-child relationship sufficient to support a Section 1983 claim.

Although the parties have not raised the issue, the standing of the minor sibling J.B. must also be addressed.  The Eastern District of Pennsylvania has considering the standing of siblings to sue pursuant to § 1983.  In *Schreiber v. City of Philadelphia*, 1999 WL 482310, at *2, the court held that a brother did not have a liberty interest in the society and companionship of his sister, and therefore lacked the standing to sue pursuant to § 1983. The court noted that "[i]f a sibling's liberty interest were recognized, 'there could be no principled way of limiting such a holding to the immediate family or perhaps even to blood relationships.'" *Id.* at *2 (quoting *Bell v. Cirt of Milwaukee*, 746 F.2d 1205, 1247 (7th Cir. 1984)). In this case, J.B., as the sibling of minor Plaintiffs G.Z. and P.Z., similarly lacks standing to bring a constitutional claim.  J.B. suffered differently than the sibling in *Schreiber* - J.B. lost the companionship of his siblings for approximately one month, whereas the plaintiff in *Schreiber* lost the companionship of his sibling for a lifetime.  However, there is no reason to distinguish the cases on this basis. A person's claimed liberty interest based upon either a temporary or a permanent loss of companionship of a sibling is not a recognized liberty interest.

Therefore, the Court will dismiss all § 1983 claims brought by Plaintiffs Bruce Bayer and J.B.

### III.    Section 1983 Claims

Plaintiffs allege that Defendants violated section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be

> subjected, any citizen of the United States or other persons
> within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured. . . .

Plaintiffs allege that Defendants are liable under Section 1983 for violations of their

constitutional rights under the Fourteenth Amendment's procedural due process clause.

### A.      Fourteenth Amendment - Procedural Due Process

"The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner." *Miller v. City of Philadelphia*, 174 F.3d

368, 373 (3d Cir. 1999) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)).  In

determining whether the Plaintiffs' procedural due process rights have been violated, the

court must weigh: (1) the private interest affected by the government action; (2) "'the risk

of an erroneous deprivation'" of the private interest through the procedures used by the

government, and the probably value, if any, of additional or substitute procedural

safeguards; and (3) the government's interest, including the government function at issue

and the fiscal and administrative burdens that additional or substitute procedural

safeguards would require.  *Id.* at 373 (quoting *Matthews*, 424 U.S. at 333).

Plaintiffs failed to receive a hearing within seventy-two (72) hours of the children

entering protective custody.  The relevant Pennsylvania statute states that "An informal

hearing shall be held promptly by the court or master not later than 72 hours after the

child is placed in detention or shelter care." 42 Pa. Cons. Stat. Ann. § 6332(a). Since

Plaintiffs clearly did not have this hearing within seventy-two (72) hours, the agency

violated a state statutory right.

However, the inquiry into whether the Plaintiffs' procedural due process rights

were violated cannot stop at the question of whether Defendants followed state law, as "federal constitutional standards rather than state statutes define the requirements of procedural due process." *Robinson v. Via*, 821 F.2d 913, 923 (2d Cir. 1987).

Courts have held that parents hold a fundamental liberty interest in the care and management of children. *Miller*, 174 F.3d at 374. Plaintiffs in this case allege an injury to this interest, and "courts must ensure that procedures used in the case adequately addressed the parent's interest." *Lebar v. Bahl*, No. 3:02-CV-2380, 2006 WL 3420624, at *5 (M.D. Pa. Nov. 28, 2006). Accordingly, "due process guarantees prompt and fair post-deprivation judicial review." *Brown v. Daniels*, 128 Fed. App'x 910, 915 (3d Cir. 2005).

Although the Third Circuit Court of Appeals has not defined a "bright-line rule" for when "a post-deprivation hearing is sufficiently 'prompt,' the delay should ordinarily be measured in hours and days, as opposed to weeks." *Id.* at 915 (citing *Tower v. Leslie-Brown*, 326 F.3d 290, 299 (1st Cir. 2003)).

The Third Circuit Court of Appeals in *Brown* noted that the various circuits have permitted different levels of delay in the timing of a post-deprivation hearing. *Id.* (citing *Tower*, 326 F.3d at 299 (approving a post-deprivation hearing that occurred three days after the children's removal where the officials sought judicial review within hours of removal of the children); *Berman v. Young*, 291 F.3d 976, 985 (7th Cir. 2002) (concluding that 72 hours was "rather outrageous", but no actual damages resulted from the delay); *Whisman v. Rinehart*, 119 F.3d 1303, 1310 (8th Cir. 1997) (finding that a hearing held 17 days later was not "prompt" given the circumstances); *Jordan v. Jackson*, 15 F.3d 333,

351 (4th Cir. 1994) (holding that a sixty-five (65) hour delay in judicial review of emergency removal was constitutionally permissible, but on the outer boundary of permissible delay); *Cecere v. City of New York*, 967 F.2d 826, 829-30 (2d Cir. 1992) (approving a four day delay); *Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir. 1983) (approving a twelve day delay, but noting that the hearing would have taken place earlier if the parents had not requested additional time to prepare)).

In determining whether the Plaintiffs' procedural due process rights have been violated, the Court must determine if the post-deprivation hearing afforded to the Plaintiffs was sufficiently "prompt" for procedural due process standards.  In this case, the Plaintiffs' private interest was an interest in receiving a post-deprivation hearing after the children were placed in custody.  In this case, Plaintiffs waited almost one week for the hearing to occur, as the children were placed in custody on January 10, 2003, and the hearing was held on January 16, 2003.

Defendant Dry stated that the children were taken into custody late on January 10, 2003, a Friday, and she then forwarded the information necessary for an emergency petition for protective custody to the CYS solicitor on the morning of January 13, 2003, a Monday.  (Doc. 165 Ex. H ¶¶ 32-34.)  Defendant Dry also noted that no judge is available during weekend hours for the emergency petition.  (*Id.* ¶ 33.)  According to Dry, the filing of the petition is the responsibility of the solicitor, and not that of the caseworkers at CYS. (*Id.* ¶ 35.)

A risk of erroneous deprivation did exist based upon the facts.  If the allegations of abuse were unfounded, Plaintiff Angela Bayer was prepared to take the children back into custody.  *See Lebar v. Bahl*, No. 3:02-CV-2380, 2006 WL 3420624, at *5 (M.D. Pa.

16

Nov. 28, 2006) (considering whether the parents were available to take custody in determining the risk of erroneous deprivation).   At the time the children were removed into custody, the children were in the physical custody of their mother, and not the father, who had been the subject of the alleged abuse. (A. Bayer Dep. 107:7-109:11.)  Plaintiff Angela could have had the opportunity to take custody of P.Z. and G.Z. earlier if a hearing was held within the proper time.

Although the government did have a compelling interest in the physical and psychological welfare of children, the time frame for procedural due process does not permit a delay of almost one week.  As noted, the Third Circuit Court of Appeals has not established a bright-line rule.  Other circuits, and indeed other district courts in this circuit, have held that delay in post-deprivation process of seventy-two (72) hours or greater is unconstitutional.  *See Patterson v. Armstrong County Children & Youth Servs.*, 141 F. Supp.2d 512, 539 (W.D. Pa. 2001) ("This Court concurs in the judgment of the Fourth, Eighth and Ninth Circuit Courts of Appeals that ordinarily, 72 hours for the post deprivation (temporary protective custody) judicial review, with notice and meaningful opportunity to be heard, is at the outside tolerance of the Fourteenth Amendment.").  The time frame proscribed by 42 PA. CONS. STAT. ANN. § 6332(a) acts as a safeguard to ensure the rights of the parents, and but does not necessarily reflect federal procedural due process standards.

Viewing the entire record in the light most favorable to Plaintiffs, the Court is of the opinion that the Plaintiffs' procedural due process rights were violated based on the failure to receive a post-deprivation hearing in a period which would satisfy due process.

B.      Supervisor Liability

For a supervisor to be held liable under § 1983, Plaintiffs must show more than *respondeat superior* liability, and instead must show that the supervisor played a personal role in violating their rights.  *Andrews v. City of Philadelphia*, 895 F.2s 1469, 1478 (3d Cir. 1990).  This can be shown by personal conduct of the supervisor, personal direction from a supervisor, or by "actual knowledge and acquiescence."  *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Chernavsky v. Twp. of Holmdel Police Dep't*, 136 Fed. App'x 507, 509-10 (3d Cir. 2005).

Plaintiffs have alleged that Defendant Bahl had personal knowledge of, or involvement in, the alleged violations of Plaintiffs' procedural due process rights.  (B. Bayer Dep. 187: 6-11).  Plaintiffs alleged in their Complaint that they told Defendant Bahl that the children were held beyond the time permitted by their federal constitutional rights.  In response, Plaintiffs allege that Defendant Bahl replied "three days, five days, a month, it doesn't matter how long.  I have them now."  (Compl. ¶ 65, Doc. 1.)  However, this portion of the Complaint has been unsubstantiated by any evidence brought forth by the Plaintiffs.  But, Bruce Bayer says he had conversations with Bahl regarding the case during the case.  "Did he tell me that, I looked into your case, no.  Did he have conversations with me about my case during the case, yes.  So was he aware of my case, absolutely."  (B. Bayer Dep. 186:19-25.)

In contrast, Plaintiff Angela Bayer noted that she only spoke to Defendant Bahl on the telephone. (A. Bayer Dep. 121:14-24.)   When asked about what he was doing, she said that "I can't say what he's doing in his supervisory administrative capacity."  (A. Bayer Dep. 122: 8-13.)  She also said that "As the director of Children & Youth, he

18

oversees everything. So yes, he has direct contact."  (A. Bayer Dep. 122: 1-6.)

Plaintiff Angela Bayer's deposition appears to point to liability simply based on Defendant Bahl's position as a supervisor.  Such liability is not permitted pursuant to § 1983.  *Brown v. Daniels*, 128 Fed. App'x 910, 913 (3d Cir. 2005).  However, Bruce Bayer's deposition states that he had conversations with Defendant Bahl about the case during the case.  This raises a question of material fact as to whether Defendant Bahl had personal knowledge regarding the Fourteenth Amendment procedural due process violation.  Therefore, summary judgment for Defendant Bahl is inappropriate at this time.

### IV.    Immunities

#### A.    Absolute Immunity

The immunity doctrines give individuals the ability to perform their official duties and apply their discretion without fear or threat of retaliation.  *See Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001).  Courts have recognized absolute immunity for those performing judicial, legislative, and prosecutorial functions.  *See, e.g.,  Stump v. Sparkman,*  435 U.S. 349, 363 (1978) (discussing judicial immunity); *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (discussing prosecutorial immunity).  In determining absolute immunity, courts use a "functional approach" where the official receives immunity based upon "the nature of the function performed . . . and evaluates the effect that exposure to particular forms of liability would likely to have on the appropriate exercise of that function.  *Hughes*, 242 F.3d at 125 (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)).

The Third Circuit Court of Appeals has held that child welfare workers and social workers are protected under absolute immunity in some situations.  *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 494-98 (3d Cir. 1997), *cert. denied*, 522

U.S. 850 (1997).  In applying other prosecutorial immunity principles, the *Ernst* court held that the child welfare workers were entitled to absolute immunity based upon prosecutorial immunity "for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings."  *Id.* at 495.  Child welfare workers are similarly protected under judicial immunity.  Caseworkers are "directly responsible for the recommendations made to the court in dependency proceedings, [so] their actions in determining those recommendations and communicating them to the court are 'intimately associated' with the judicial process."  *Id.* at 496.  However, the Third Circuit Court of Appeals declined to give absolute immunity to child welfare workers acting in an investigative or administrative capacity outside of the context of judicial proceedings.  *Id.* at 497 n.7.

*Ernst* noted that there are numerous public policy considerations for applying absolute immunity to child welfare works, including the ability to exercise independent judgment as to whether to bring a child dependency proceeding.  *Id.*  In the absence of absolute immunity, child welfare workers would face retaliation for their role in child dependency actions.  *Id.* at 496-97.  The *Ernst* court also noted that there are other protections against unconstitutional conduct besides a section 1983 action.  *Id.* at 497.  The adjudication of a child dependency case is decided by a neutral judge guided by the "best interest of the child" and subject to appellate review.  *Id.*  Child welfare workers are also under the supervision of the agency that employs them.  *Id.*

Defendants have absolute immunity in this case with respect to whether to bring a child dependency hearing.  However, caseworkers do not qualify for absolute immunity when investigating or administering cases.  Therefore, we must consider if the CYS

20

caseworkers are protected under qualified immunity.

      B.    Qualified Immunity

      "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Determining whether qualified immunity applies is a two-step process: "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right."  *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006).  If the court finds that a defendant violated a constitutional or statutory right, then "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'"  *Id.*; *see also Doe v. County of Centre*, 242 F.3d 437, 454 (3d Cir. 2001) (defining test as "(1) whether the plaintiffs alleged a violation of their statutory or constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official should have known that the alleged action violated the plaintiff's rights.").  A right is clearly established when its meaning is "sufficiently clear that a reasonable official would understand what he is doing violates that right."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

      The evidence demonstrates that the Plaintiffs' procedural due process rights were not satisfied when they failed to receive a post-deprivation hearing within a time period that comports with due process.  The question, therefore, is whether this right to a hearing within a given time, is clearly established, or "if reasonable officials in the defendants' position at the relevant time could have believed that, in light of what was in

the decided case law, that their conduct would be lawful." *Good v. Dauphin County Soc.*
*Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1992).

The "clearly established" element of qualified immunity is broad enough to include
the clearly established law of other circuits. *See Turiano v. Schnarrs*, 904 F. Supp. 400,
414 n. 15 (M.D. Pa. 1995).  The procedural due process right to a prompt post-
deprivation hearing within the boundaries of seventy-two (72) hours was clearly
established at the time of the violation.  That a hearing held almost one week after the
children were placed in custody violates due process was certainly clearly established.

Numerous courts have stated that seventy-two (72) hours is a limit for procedural
due process.  In *Jordan v. Jackson*, 15 F.3d 333, 349 (4th Cir. 1994), *cited with approval*
*in Miller*, 174 F.3d at 372 n. 4, the Fourth Circuit Court of Appeals clearly established that
seventy-two (72) hours, or the approximate duration of a weekend, was the outer limit for
a hearing on child protective custody.  Similarly, in *Patterson v. Armstrong County*
*Children & Youth Servs.*, 141 F. Supp. 2d 512, 539 (W.D. Pa. 2001), the court held that
seventy-two hours "is at the outside tolerance" for a post-deprivation child protective
custody hearing.  Although the violation of state law alone will not deprive an official of
qualified immunity, the explicit Pennsylvania statutory law requiring a post-deprivation
hearing within seventy-two hours pursuant to 42 PA. CONS. STAT. ANN. § 6301(b)(4)
clearly served as notice to conduct a prompt hearing.  *Patterson*, 141 F. Supp. 2d at 539.

Furthermore, the actions of the Defendant Dry was not objectively reasonable.
She forwarded the information for an emergency petition on the morning of Monday,
January 13, 2003.  (Doc. 165 Ex. H. ¶ 34.)  She also attended the hearing on January 16,
2003.  (*Id.* ¶ 36.)  Defendant Dry was aware that the hearing was held almost one week

after the removal of the children, but failed to act further.  She had the guidance of the

*Patterson* and *Jordan* courts, which explicitly required a prompt and timely hearing.  She

also had the guidance of Pennsylvania state law.  It was not reasonable for the

Defendant Dry to take the minors into protective custody without providing the Plaintiffs

with a prompt hearing.  This delay was clearly not reasonable, and Defendant Dry should

have acted to have a hearing within a period of time that would comport with due

process.  Therefore, the Court finds Defendant Dry is ineligible for qualified immunity on

the post-deprivation procedural due process claim.

There is a question of material fact regarding Defendant Bahl's supervisory liability

based on personal knowledge or acquiescence of the violation of procedural due

process.  Regardless, with respect to qualified immunity, there is a clearly established

right in a post-deprivation hearing within seventy-two (72) hours.  Defendant Bahl also

had the guidance of the *Patterson*  and *Jordan* courts, as well as the guidance of

Pennsylvania state law.  If he is found to have personal knowledge or acquiescence of

the violation, there is evidence that he did not act reasonably with respect to the post-

deprivation hearing.  There is no evidence presented that Defendant Bahl made any

effort to expedite the hearing so that it would occur within a time that would comport with

procedural due process.  Therefore, if it is found that Defendant Bahl had actual

knowledge or acquiescence of the procedural due process claim, he too would be

ineligible for qualified immunity.

### V.   Pennsylvania Constitutional Rights, Article I, Section 1: Procedural Due Process

Plaintiffs also allege violations of their due process rights pursuant to Article I,

Section 1 of the Pennsylvania Constitution.  The requirements of Article I, Section 1 are

indistinguishable from those of the Due Process Clause of the Fourteenth Amendment

and the same analysis applies.  *Pennsylvania Game Comm'n v. Marich*, 666 A.2d 253,

255 n. 6 (Pa. 1995).

In the previously discussed federal procedural due process analysis, the Court

determined that the Plaintiffs' right to Fourteenth Amendment procedural due process

was violated.  As the federal and state analysis are identical, we need not repeat it here.

Viewing the entire record in the light most favorable to Plaintiffs, the Court is of the

opinion that there is a Pennsylvania Constitution, Article I, Section 1 procedural due

process violation based on the failure to receive a hearing within seventy-two (72) hours

of the children entering custody.

However, there is no private cause of action for damages arising from violations of

the Pennsylvania Constitution.  *See Jones v. City of Philadelphia*, 890 A.2d 1188, 1215-

16 (Pa. Commw. Ct. 2006) (discussing the lack of a cause of action for damages under

the Pennsylvania Constitution and declining, "without the benefit of legislative action," to

create such a cause of action for violations of the state constitution's prohibition against

the use of excessive force).  Although monetary relief is unavailable, "other remedies,

such as declaratory or injunctive relief . . . are . . . remedies under the Pennsylvania

Constitution."  *Id.* at 1216.  However, in this case, Plaintiffs have failed to seek

declaratory or injunctive relief.  As Plaintiffs seek only a monetary remedy in the form of

compensatory and punitive damages, the cause of action for procedural due process

violations based upon Article I, Section 1 of the Pennsylvania Constitution against

24

Defendants Bahl and Dry will be dismissed.  As the claims based upon Article I, Section 1 of the Pennsylvania Constitution will be dismissed due to the lack of remedy available to the Plaintiffs, there is no need for the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") to be addressed.

### VI.    Punitive Damages

Plaintiffs seek punitive damages from the Defendants based upon their conduct in this case.  In certain circumstances, punitive damages may be awarded for violations of civil rights.  *Cochetti v. Desmond*, 572 F.2d 102, 105 (3d Cir. 1978).  Although a municipality cannot be held liable for punitive damages under § 1983, a municipal official can be liable for punitive damages in his personal capacity.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981); *Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988) (noting that punitive damages are not available when suing a defendant in his official capacity).

In suits brought pursuant to 42 U.S.C. § 1983, punitive damages may be recovered from individual officers but not from government entities, if the officers "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  No reasonable juror could find that Defendant Dry acted with the requisite motive or intent to justify punitive damages.  Although Plaintiffs did suffer a procedural due process violation when they failed to receive a timely hearing, they did receive a post-deprivation hearing within one week of the children's removal.  Defendant Dry did endeavor to provide a post-deprivation hearing to the Plaintiffs.  She did forward the

information for an emergency petition on the morning of Monday, January 13, 2003, the next business day after the children were taken into custody.  (Doc. 165 Ex. H. ¶ 34.) Such action does not amount to "reckless disregard" or an "evil motive."  As the Plaintiffs did receive a hearing within one week's time, it would also be unreasonable for any juror to find that Defendant Bahl acted in reckless disregard, if he is found to have supervisory liability.  Therefore, the claim for punitive damages against Defendants Bahl and Dry will be dismissed.

All other claims against Defendants Robson and Geese will be dismissed based upon the *Rooker-Feldman* doctrine.  Therefore, the Court will also dismiss Plaintiffs' claim for punitive damages against these Defendants.  *See Pirino v. Scranton Police Dep't*, Civ. A. No. 3:05-CV-0293, 2005 WL 3006983 (M.D. Pa. Nov. 9, 2005).

**CONCLUSION**

After reviewing all pertinent evidence from the record, the Court is of the opinion that genuine issues of material fact exist as to some of the matters present in this case. Plaintiffs' motion to strike the affidavit of Defendant Robson pursuant to Federal Rule of Civil Procedure 56(e) will be dismissed as moot.  All claims alleged by Plaintiffs Bruce Bayer and J.B. will be dismissed.  Defendants' motion for summary judgment is granted for all counts with respect to Defendants Geese and Robson.  Defendants' motion will also be granted as to all Defendants on the Pennsylvania Constitution, Article I, Section 1 claim and on the punitive damages claim. Defendants' motion will also be granted with respect to Defendant Dry on the Fourteenth Amendment substantive due process claim. Defendants' motion will be denied with respect to Defendants Bahl and Dry based upon

26

the Fourteenth Amendment procedural due process claim.  Accordingly, Defendants'

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) will be

granted in part and denied in part.

An appropriate Order follows.


October 15, 2007                                                 /s/ A. Richard Caputo
Date                                                                A. Richard Caputo
                                                                    United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRUCE BAYER and ANGELA BAYER,
individually and as parents and/or natural
guardians of G.Z., P.Z., and J.B.,

      Plaintiffs,

          v.

MONROE COUNTY CHILDREN &
YOUTH SERVICES, et al.,

      Defendants.

NO. 3:04-CV-02505

(JUDGE CAPUTO)

## ORDER

    **NOW**, this __15th__ day of October, 2007, **IT IS HEREBY ORDERED** that Plaintiffs'

motion to strike the affidavit of Defendant Robson pursuant to Federal Rule of Civil

Procedure 56(e) (Doc. 202) is **DISMISSED** as **MOOT**.

    **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment

(Docs. 159, 164) pursuant to Federal Rule of Civil Procedure 56(c) is **GRANTED** in part

and **DENIED** in part as follows:

1.    Defendants' motion is **GRANTED** with respect to all claims asserted by Plaintiffs

      Bruce Bayer and J.B.  All claims brought by these Plaintiffs are **DISMISSED**.

2.    Defendants' motion is **GRANTED** with respect to Defendants Geese and Robson.

      All claims against Defendants Geese and Robson are **DISMISSED**.

3.    Defendants' motion is **DENIED** with respect to Defendants Dry and Bahl for the

      claim based upon a violation of § 1983 pursuant to Plaintiffs' procedural due

      process rights under the Fourteenth Amendment.  It is further ordered that

Defendants Dry and Bahl are not entitled to qualified immunity on this claim.

4.  Defendants' motion is **GRANTED** with respect to Defendants Dry and Bahl for the

claim based upon a violation of the Pennsylvania Constitution, Article 1, Section 1.

5.  Defendants' motion is **GRANTED** with respect to Defendants Dry and Bahl for the

claim of punitive damages.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge